## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**TARGETED JUSTICE, INC**.;
a 501(c)(3) Texas Corporation,  et al.

                            Plaintiffs,

 vs.

**MERRICK GARLAND** et al.

                        Defendants.

Case No. 6:23-cv-00003

## PLAINTIFFS' REPLY IN OPPOSITION TO 'OFFICIAL CAPACITY DEFENDANTS PARTIAL MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)

i

# TABLE OF CONTENTS

Table of Authorities...................................................................................................ii

Introduction............................................................................................................1

Statement of the Nature and Stage of the Proceeding.............................................3

Statement of Relevant Facts...................................................................................5

      Defendants' False Statements and Misrepresentations....................................5

Statement of The Issues to By Ruled Upon by The Court.......................................14

Standard of Review for Motion to Dismiss.............................................................14

      Rule 12(b)(1) ...........................................................................................15
      Rule 8.......................................................................................................16
      Article III..................................................................................................16
      Rule 12(b)(6 .............................................................................................17
      Privacy Act and Exhaustion of Remedies..................................................19

Summary of the Argument.....................................................................................19

Argument..............................................................................................................21

      The Glaring Omissions That Render the MTD Lacking.. ...........................21
      Request to Strike......................................................................................22
      Plaintiffs have Standing............................................................................24
      Exhaustion of Remedies Inapplicable.........................................................24
      F.R.Civ.Proc. 12(b)(6) …………………………………………26

Conclusion...........................................................................................................28

Certificate of service ...........................................................................................28

Certificate of conference (to exceed page #) .......................................................29

## TABLE OF AUTHORITIES

**Cases**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................passim

*Cebollero Bertran v. PRASA,* 4 F.4th 63 (1st Cir. 2021) ........................................................1

*CIA v. Sims*, 471 U.S. 159 (1985) .........................................................................................12

*Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762 (5th Cir. 2019) ................................16

*Conley v. Gibson*, 355 U.S. 41 (1957) ..................................................................................16

*Elhady v. Kable,* 391 F.Supp.3d 562 (E.D.VA 2019), *rev'd* 993 F.3d 208 (2021) .........................2

*Funk v. Stryker Corp.*, 631 F.3d 777 (5th Cir. 2011) ……...................................................19

*Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256 (11th Cir. 1997).........19

*Clark v. Tarrant Cty.*, 798 F.2d 736 (5th Cir. 1986) ........................................................19

*Geiger v. Jowers*, 404 F.3d 371 (5th Cir. 2005) ……......................................................16

*Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141 (5th Cir. 2009) .............................17,18

*IM v. Houston Independent School District*, 2021 WL 2270271 (S.D. Tex 2021) .......................16

*Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136 (1980)……...................19

*In re Mirant Corp*, 675 F.3d 530 (5th Cir. 2012) .......................................................................15

*Lone Star Fund v (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383 (5th Cir. 2010) ……...........19

*Lormand v. US Unwired, Inc.*, 565 F.3d 228 (5th Cir. 2009) ……........................................ 18

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ............................................................passim

*Lujan v. National Wildlife Federation,* 497 U.S. 871 (1990)........................................................17

*Neitzke v. Williams*, 490 U.S. 319 (1989) ...............................................................................18

*Orlikow v. United States*, 682 F. Supp. 77 (D.D.C. 1988).........................................................12

*Patrick v. Wal-Mart, Inc.*, 681 F.3d 614 (5th Cir. 2012) ..........................................................12

*Roum v. Fenty*, 697 F. Supp. 2d 39 (D.D.C. 2010) .........................................................23

*Russell v. Harris County Texas*, 500 F.Supp.3d 577 (S.D.TX 2020) ……..............................passim

*Scheuer v. Rhodes,* 416 U.S. 232 (1974) .................................................................1,16

*Sinegal v. Big Horn Auto Sales*, 2022 WL 799908 (S.D. Texas 2022) .....................................15,23

*Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020) .................................................................15

*Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937 (5th Cir. 2013) ……...................................15

*Wilmington v. Purifoy*, 2022 WL 861509 (S.D. Texas 2022) ......................................................19

**Constitutional Provisions, Statutes, and Rules**

U.S. Const.:

      Art. III.......................................................................................................passim

      Sixth Amendment .................................................................................. 25

Federal Rule of Civil Procedure 8.........................................................................15

Federal Rule of Civil Procedure 12(b)(1) .......................................................passim

Federal Rule of Civil Procedure 12(b)(6) .......................................................passim

Federal Rule of Civil Procedure 56.......................................................................1

Administrative Procedure Act, 5 U.S.C.: §
    502(a) .........................................................................................................25
    5 U.S.C. § 552(a)(4)(B) ...........................................................................19

Homeland Security Presidential Directive 6 (HPDS-6) ........................................5,11

## Introduction

Defendants' Motion to Dismiss ("MTD") compels dismissal because it refrains from mentioning –let alone discussing-- fundamental claims of the Second Amended Complaint such as the constitutional challenge to the placing of innocent civilians in the TSDB and the Writ Mandamus sought against Defendants ordering them to fulfill the duties inherent to their position.

Moreover, the MTD intends to induce the Court to apply an erroneous standard of law straying from the appropriate F.R.Civ.Proc.12 analysis, which implies an inappropriate comparison of both parties' competing claims. *See Cebollero Bertran v. PRASA,* 4 F.4th 63 (1ˢᵗ Cir. 2021).

Defendants are asking the Court to disregard the well-pleaded facts of the Second Amended Complaint ("SAC") because they are, admittedly, unique in their kind. Coming to the realization that law-enforcement agencies, vested with the responsibility of protecting citizens, are intentionally placing innocent people in a terrorist watchlist – is a hard pill to swallow.

However, seemingly far-fetched allegations do not amount to the legal implausibility or falsity required for the Court to discard them.

By plaguing the argument with derogatory comments and phrases mocking Plaintiffs' claims, Defendants intend for the Court to enter into a credibility judgment of the Second Amended Complaint's well-pleaded facts. "Rule 12(b)(6) does not countenance...dismissals based on a judge's disbelief of a complaint's factual allegations" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). **A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely**". *Id*. (Emphasis ours).

Although the Court may consider documents outside of the pleadings to rule on a Motion to Dismiss, it cannot apply a F.R.Civ.Proc. 56 standard to a F.R.Civ.Proc. 12 analysis.

1

Plaintiffs posit that few times has the Court encountered such thoroughly researched and documented pleadings as the Second Amended Complaint in this case. The well-pleaded, detailed, factual allegations of the Second Amended Complaint surpass the Supreme Court standard of "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47, (1957). Asking for **plausible grounds does not impose a probability requirement** at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [acts]. *Bell Atlantic Corp. v. Twombly*, *supra*. 550 U.S. at 545.

From the references within its text, the Court can discern that over eighty percent of the pleadings are uncontroverted facts that emerge from, *inter alia*: a) sworn statements, answers to discovery and deposition testimony provided in previous cases; b) audit reports of Defendant Federal Bureau of Investigation's (FBI) intra-agency operation, Terrorist Screening Center (TSC); c) news articles containing admissions and/or statements by/or related to defendants; d) case law documenting prior agency abuses and challenges to the Terrorists Screening Database (TSDB); e) documents produced to third parties in reply to Freedom of Information Act (FOIA) requests.

The construction of the pleadings in this case thus relied on Defendants' or government officials' prior statements, admissions against interest, documents and statistics that cannot be refuted. **Roughly eighty percent of the complaint derives from uncontroverted material facts and admissions against interest** by any or various Defendants or matters susceptible to judicial notice by this Court. In fact, many pleadings were copied verbatim from official documents.

Fully aware of the disparaging backlash the instant case would generate, Plaintiffs made it a goal of culling as much uncontroverted information as was available to construe the pleadings. Plaintiffs Privacy Act requests were precisely intended to allege with an [unrequired] categorical

certainty that each one was illegally placed in the TSDB devoid of the required reasonable suspicion to do so.

Plaintiffs' pleadings thus surpass the "well-pleaded facts" standard. Most of its statements are uncontested. Both the initial First Amended Complaint and the Second Amended Complaint contains thorough references to the federal question and the federal issues evoked. Defendants' outright failure to discuss them in their Motion to Dismiss is an indication of how significant and meritorious Plaintiffs' constitutional claims are.

<u>Disparaging adjectives cannot convert the true, well-pleaded, mostly uncontroverted facts of the Second Amended Complaint into false ones</u>.

Aside from denying the Motion to Dismiss based on the sound and irrefutable arguments set forth below, Plaintiffs respectfully request that this Court proceed with utmost celerity in the scheduling of the case, holding of a hearing and the adjudication of the Preliminary Injunction. Every day that transpires without the elimination of the illegal components of the Terrorist Screening Database that contain the names of non-terrorists such as Plaintiffs and TJ Members, they continue to suffer irreparable damages.

### Statement of the Nature and Stage of the Proceeding

On January 11, 2023, Plaintiffs presented this case.[1] On February 5, Plaintiffs presented the Motion for Preliminary Injunction. [Dkt. 14] On March 15th, Plaintiffs filed the Second Amended Complaint. [Dkt. 26]. The claims for relief Plaintiffs seek from the Court include, but are not limited, to the following:[2]

---

[1] The Clerk of the Court requested the complaint be amended to write only the initials of the last name of the minors in the case. Nothing else in the pleadings changed.

[2] This short list of claims is not to be construed as an amendment to the pleadings. Rather, it is a short summary set forth for the purposes of contrasting the glaring omissions in the arguments of Defendants' Motion to Dismiss pertaining to the description of the "Nature of the Proceeding".

**Nowhere** in the Motion to Dismiss did Defendants write any of the following words or phrases, despite their prevalence in the pleadings and/or claims for relief of the Second Amended Complaint: "McCarthy blacklist",

I.      Enter **Declaratory Judgment** declaring unconstitutional and an abuse of agency discretion the practice of secretly including innocent civilians such as Plaintiffs and TJ Members in two categories the Terrorist Screening Data Base created and maintained by Defendant FBI's Terrorist Screening Center (TSC). (Complaint, ¶¶ 547-548)

1.      Enter **Declaratory Judgment** declaring the use of those subcategories of the TSDB as the roster of the human experimentation "Program" condemning Targeted Individuals such as Plaintiffs and TJ Members to a life of torture. (Complaint, ¶¶ 549-550)

2.      Issue a Writ of **Mandamus** ordering official capacity Defendants to adhere to their oath of office and comply with the statutory and legal duties of it. (Complaint, ¶¶ 551-553)

3.      Enter **Declaratory Judgment** declaring a violation of the Privacy Act for Defendants to circulate the TSDB containing Plaintiffs' and TJ Members' names to government and non-government entities and failing to reply to Plaintiffs' Privacy Act requests. (Complaint, ¶¶ 554-555)

4.      Issue a **Permanent National Injunction** ordering the elimination of the categories within the TSDB that list non-terrorists and recall the lists with Plaintiffs' and TJ Members' names already disseminated. (Complaint, ¶¶ 556-561)

5.      Hold Defendants jointly liable under *Bivens* for civil rights violations perpetrated upon Plaintiffs under color of law.

On April 12, Official Capacity Defendants filed their joint Motion to Dismiss ("MTD") and Opposition to Motion for Preliminary Injunction. [Dkt. 41] The arguments for dismissal were limited to the following:

a)      Lack of jurisdiction because of implausibility of claims;

b)      Lack of individual and associational standing for failing to allege plausible damages caused by defendants;

---

"Declaratory Judgment", "Convention", "abuse", "agency discretion", "arbitrary", "capricious", "unconstitutionality", "National Injunction", "Bivens", "roster", "derogatory information", "cruel and unusual punishment". "FISA", "human rights", "under color of law".

Likewise, only <u>once</u> do Defendants mention the fundamental term "due process" and <u>**twice**</u> the word "unconstitutional": once citing Plaintiffs' pleadings (p. 22), and another one citing a case (p. 24).

c)   Lack of jurisdiction for failure to exhaust administrative remedies regarding the Privacy Act requests;

d)   Failure to state a claim upon which relief could be granted because of the fantastical nature of the claims.

Plaintiffs hereby submit its reply to the "Motion to Dismiss". By means of a separate document filed on this date, Plaintiffs are submitting their Sur reply to "Opposition to Motion for Preliminary Injunction".

## Statement of Relevant Facts

Defendants' Motion to Dismiss is predicated on false facts or premises that must be set straight for the record before proceeding with the legal arguments that compel its denial. This is necessary because the legal arguments for dismissal that Defendants raise are grounded upon a myriad of false statements that need to be discarded in order to proceed with a discussion of the legal standard as it applies to the real facts of the case.

## Defendants' False Statements and Misrepresentations

**False statement #1**: Page 1, first paragraph of the Motion to Dismiss states that this case entails Plaintiffs' challenge to a "**small subset**" of the TSDB. The clarification of this false statement is essential to proving the illegality of the majority of the TSDB as set forth in the Second Amended Complaint and the documents in support thereof.

**Truth**:  The Second Amended Complaint explicitly alleges that the non-investigative subjects' subcategories of the TSDB comprise at least ninety-seven percent (97%) of the names on it. (SAC, ¶¶ 25, 163, 318). This means that most of the names in the TSDB belong to people with no ties to terrorism. In fact, Plaintiffs alleged that KSTs in the no-fly and selectee lists are the exception and not the norm in the TSDB, comprising less than .5% (.29%) of the list. (Complaint, ¶ 212, 230). This, in open violation of various legal precepts such as the Homeland Security

Presidential Directive 6 ("HSPD-6") This 2003 executive order instituted a policy designed to develop, integrate, and maintain "thorough, accurate and current information" concerning individuals "known or appropriately suspected to be or have been engaged in conduct constituting, in preparation for, in aid of or related to terrorism" ("Terrorist Information"). (**Exhibit 7** of the SAC).

Thus, Plaintiffs' challenge of Defendants FBI's, Wray's, Kable's and their predecessors' unconstitutional actions refers to the majority of the TSDB that includes the portion listing people that don't represent a terrorist threat.

**False statement #2**: Defendants assert in the Motion to Dismiss that Plaintiffs invented the term "non-investigative subject" (NIS)[3].

**Truth**: A simple one-second Google search of the term "non-investigative subject" renders more than 22,000 results, the first one being the document included as **Exhibit 1** of this motion.

Yet Defendants falsely represent to the Court that Plaintiffs made the term up.



A plethora of Official <u>**USDOJ**</u>/FBI documents reference and discuss NIS in the TSDB. Such is the case of the 2008 Office of the Inspector General (OIG) Audit Report of Defendant FBI's intra-agency operation Terrorist Screening Center (**Exhibit 1**) specifically states:

---

[3] Please see Motion to Dismiss, page 14: *"Plaintiffs refer to this subset of individuals as "Non-Investigative Subjects," or "NIS," see, e.g., Second Am. Compl. ¶ 21, but this term is not used by any Defendant".*

[W]e learned that the NCTC[4] is **receiving nominations for non-investigative subjects directly from FBI field personnel**. Because this nomination practice is **not covered in FBI Policy**, **there are no requirements for FBI personnel to ensure that any resulting watchlist records are updated or removed as appropriate**. There is likewise no mechanism to ensure that the nominations directly passed to NCTC by field personnel are appropriate and that the information is complete and accurate. (Exh. 1, page 4, emphasis ours).

The USDOJ Inspector General's report went on to state:

The[e] weaknesses indicate that the potential exists for the **watchlist nominations to be inappropriate, inaccurate, or outdated because the watchlist records are not appropriately generated, updated, or removed as required by FBI policy**. (Emphasis ours).

Plaintiffs request that this Court take judicial notice of **Exhibit 1** for two purposes. First, to establish the falsity of Defendants' assertion that Plaintiffs made up the term "non-investigative subject" term. Second, to establish the uncontroverted material fact that since at least 2008 the USDOJ Office of Inspector General had denounced that nominations of **Non-Investigative Subjects** (NIS) to the TSDB do not have to comply with ANY agency regulation and that such reproachable and unconstitutional practice has continued to this day.

**False statement #3**: Defendants asserted that "[i]clusion in the TSDS results from a multi-step assessment, based on analysis of available intelligence and investigative information about an individual."[5]

**False statement #4** "[F]or a nomination to be accepted, it must include enough identifying information to allow screeners to determine whether the individual is a match to a record in the TSDS, and enough information to satisfy a reasonable suspicion that the individual is a known or suspected terrorist."[6]

---

[4] NCTC stands for "National Counterterrorism Center". See page 1 of Exhibit 1.
[5] MTD, page 4, page 12 of docket 41.
[6] MTD, page 4, page 12 of docket 41.

**First true uncontroverted fact in reply to the prior 2 false statements**: The Office of the Inspector General concluded that Defendant FBI approves nominations to the TSDB from its field offices <u>without complying with any agency requirements</u>.  See **Exhibit 1**, *supra*. That's how Targeted Individuals end up in the TSDB without meeting the "reasonable suspicion" criteria or the "Watchlisting Guidance"[7] parameters Defendants allege to adhere to: because their nominations don't have to comply with agency regulation.

**Second true uncontroverted fact in reply to the prior 2 false statements**: Former Terrorist Screening Center Director Timothy Groh's specific words in his statement under penalty of perjury (**Exhibit 2** of the SAC) provided in *Elhady v. Kable,* 391 F.Supp.3d 562 (E.D.VA 2019), *rev'd* 993 F.3d 208 (2021), were the following:

> "Additionally, the TSDB includes identifying information of certain individuals who are not categorized as known or suspected terrorists." (Emphasis ours). "Limited exceptions to the reasonable suspicion standard exist for the sole purpose of supporting certain screening functions of DHS and State (such as determining eligibility for immigration to the U.S.). Individuals included in the TSDB pursuant to such exceptions are not considered "known or suspected terrorists" and are not screened as such. As a result, any U.S. person who is in the TSDB pursuant to an exception to the reasonable suspicion standard would not be required to undergo heightened aviation security screening at airports on that basis but could be selected for other unrelated reasons such as random selection."

Defendant FBI's own admissions in a prior case prove that it is a false statement to aver that all names in the TSDB belong to people reasonably suspected of terrorist activity.

The deconstruction of the three false statements discussed above should provide this Court sufficient grounds to deny the Motion to Dismiss in its entirety, since it is patently clear that by including non-terrorist in a terrorist database and disseminating it throughout the world, Defendants are engaging in highly unconstitutional conduct in violation of their oath of office.

---

[7] Exhibit 1 of Motion to Dismiss.

However, Plaintiffs must bring to the Court's attention additional false statements and inaccuracies asserted in the Motion to Dismiss to set the record straight.

**False statement #5**: "Plaintiffs have failed to plausibly allege that Defendants violated Plaintiffs' constitutional rights."[8]

**Truth**: Defendants seem to believe that the glaring omission of the discussion of Plaintiffs' first claim for relief asking for a Declaratory Judgment on the unconstitutionality of Defendants FBI's, Wray's and Kable's practice of including non-terrorists in a terrorist database without any due process disposes of it. The violations to Plaintiffs' constitutional rights go beyond the plausible. They are categorical. The material facts from where the unconstitutionality claims derive are not in controversy as they derive from uncontroverted documents admitting the illicit conduct. See **Exhibit 3** of the Second Amended Complaint and **Exhibit 1** of this motion.

Plaintiffs request that the Court order Defendants from abstaining of making such bold and false assertions in future motions.

**False statement(s)misrepresentation #6**: Throughout its Motion to Dismiss, Defendants allege that the Second Amended Complaint contains "fantastical allegations" and "conspiracy theories". Defendants' jurisdictional and statutory challenges to the sufficiency of the pleadings rely on false statements and misleading characterizations of the well-pleaded facts of the Second Amended Complaint. Defendants asserted in their Motion to Dismiss that the entire Second Amended Complaint consists of "*only conclusory statements or implausible, fantastical allegations*"[9]

---

[8] Page 2 MTD (10 of Dkt 41).

[9] See page 19 of the "Motion to Dismiss".

9

These expressions not only constitute hate speech, but they are maliciously intended to mislead the Court by casting shadow over plausible, true, well-pleaded facts grounded upon uncontested actual and historical events.

On at least fifty-five occasions, Defendants use derogatory, mocking, and condescending adjectives and phrases to deny Plaintiffs' plausible, well-pleaded facts. Defendants' catalog of deprecatory words and phrases include the following:

| TABLE 1: DEFENDANTS' DEROGATORY LANGUAGE | |
|---|---|
| **Characterization by Defendants** | **# Times** |
| baseless | 3 |
| unsupported (or without any supporting facts) | 3 |
| implausible (or not plausible) | 6 |
| frivolous | 2 |
| insubstantial (unsubstantial, patently insubstantial) | 5 |
| fail to (or have not) plausibly allege(d) | 10 |
| utterly fail to show | 1 |
| fantastical | 5 |
| entirely no basis | 2 |
| unfounded | 2 |
| fanciful | 1 |
| absolutely devoid of merit | 1 |
| bizarre | 1 |
| conspiracy theories (or conspiracy-laden claims) | 3 |
| fantastic government manipulations of their will or mind | 1 |
| essentially fictitious | 1 |
| unrealistic assertions | 1 |
| invented beliefs | 2 |
| bald assertion | 1 |
| rank speculation | 1 |
| unadorned assertions | 1 |
| government conspiracy | 1 |
| woefully short of stating plausible claims | 1 |
| **Total derogatory language references** | **55** |

### What is 'fantastical'?

Random House Dictionary definitions of the most frequently used terms above suffice to classify them as hate speech given the context, condescension, ridicule, and contempt of Plaintiffs that they entail.

| |
|---|
| **Fan·tas·ti·cal** [fan-tas-ti-kuhl] .<br>    1.  conceived or appearing as if conceived by an unrestrained imagination; odd and remarkable; bizarre; grotesque:<br>    2.  imaginary or groundless in not being based on reality; foolish or irrational |
| **fictitious** [ fik-tish-uhs ]<br>adjective<br>    3.  created, taken, or assumed for the sake of concealment; not genuine; false: fictitious names.<br>    2.  of, relating to, or consisting of fiction; imaginatively produced or set forth; created by the imagination: a fictitious hero. |
| **Implausible** [ im-plaw-zuh-buhl ]<br>Adjective<br>  not plausible; not having the appearance of truth or credibility: an implausible alibi. |

**Truth:** Defendants abstain from calling "fantastical" the constitutional challenge to the agency abuse of agency discretion the practice that exceeds the delegated powers of HSPD-6 of secretly including innocent civilians without notice, the right of confrontation or the right to redress from the TSDB. Instead, they choose to call "implausible" and fantastical the consequences of such agency action that Plaintiffs set out to prove and stop, by means of this case.

In fact, Defendants abstained entirely from discussing this issue, even though it is the First Claim for relief as well as the foundation from which the rest of Plaintiffs' claims derive.

**Truth**: Defendants' misrepresentations and mocking characterizations of the stalking, attacks, suffering, symptoms, and damages that Plaintiffs allege seem to derive from a lack of knowledge of <u>corroborated</u> historical and recent events that do away with the claims of "implausibility' that deprive the Court of jurisdiction.

Plaintiffs ask that the Court **take judicial notice** of the following **uncontroverted facts** that refute the misleading and disparaging above characterizations of the well-pleaded facts of the Second Amended Complaint and serve as backdrop to Plaintiffs' claims:

11

**HAVANA SYNDROME**.  **Uncontroverted fact**: Havana Syndrome is a real condition caused by Directed Energy Weapons. The National Academies of Science, Engineering and Medicine (NASEM) found that for the Cuban Embassy employees, Havana Syndrome began with the sudden onset of a loud noise, perceived to have directional features, and accompanied by pain in one or both ears or across a broad region of the head, and in some cases, a sensation of head pressure or vibration, dizziness, followed in some cases by tinnitus, visual problems, vertigo, and cognitive difficulties. **It also concluded that "directed, pulsed radio frequency (microwave) energy appears to be the most plausible mechanism" in explaining Havana Syndrome** (Complaint, ¶¶ 286-289; "An Assessment of Illness in U.S. Government Employees and their Families at Overseas Embassies" [Relman and Pavlin, 2020].[10] (Emphasis ours).

**MKULTRA**. **Uncontroverted fact**: Mind control experimentation is not only plausible, but very real.

From 1953 to 1966, the Central Intelligence Agency (CIA) sponsored the MK-ULTRA (Mind Kontrol Ultra) program to control human behavior. *Orlikow v. United States*, 682 F. Supp. 77 (D.D.C. 1988). (Complaint, ¶ 2)  The program's stated purpose was that of developing brainwashing and interrogation techniques. **Unsuspecting subjects underwent long-lasting, cruel experimentation without their knowledge or consent within and outside the United States.** All of it funded and controlled by the Central Intelligence Agency ("CIA"). *CIA v. Sims*, 471 U.S. 159 (1985). The late Senator Frank Church investigated the CIA MK-ULTRA program in 1975-76, in what became known as the "Church Committee". Complaint ¶¶ 3-4. (Emphasis ours).

USDOJ currently continues to fight claims deriving from MKULTRA as is the case of the class action lawsuit pending in Canada against the Attorney General of the United States.[11]

**COINTELPRO. Uncontroverted fact:** For decades Defendant FBI maintained a to crush political opposition where the agency stalked, harassed, and inflicted intentional PsyOps on its victims. Plaintiffs request that the Court take judicial notice of the fact that in the year 2000, Defendant FBI's former director Louis Freeh admitted to Congress that "(T)he FBI did operate a program that did tremendous destruction to many people, to the country and certainly to the FBI." Freeh then vowed to "redress some of the **egregious illegal action, maybe criminal action that occurred in the past**." (Emphasis ours). Complaint ¶ 6.

**GERMAN STASI. Uncontroverted fact**: The Ministry for State Security, commonly known as the Stasi (German: [ˈʃtaːziː] was the state security service of communist East Germany from 1950 to 1990. The Stasi served as a means of maintaining state authority, i.e., the "Sword and Shield of the Party" (Schild und Schwert der Partei). This was accomplished primarily through the use of a network of civilian informants. This organization contributed to the arrest of

---

[10] https://www.nationalacademies.org/news/2020/12/new-report-assesses-illnesses-among-us-government-personnel-and-their-families-at-overseas-embassies

[11] https://www.cbc.ca/news/canada/montreal/quebec-court-of-appeal-mk-ultra-1.6796756
 and https://www.mcgilltribune.com/news/mcgill-hit-with-class-action-lawsuit-for-alleged-mind-control-brainwashing-human-experiments-from-1943-to-1964-12042023/

approximately 250,000 people in East Germany. **They used blackmail, social shame, threats, and torture.** Careers, reputations, relationships, and lives were exploded to destabilize and delegitimize a critic. Some forms of harassment were almost comical: agents spread rumors about their targets, flooded their mailboxes with pornography, moved things around in their apartments, or deflated their bicycle tires day after day. Others were life-altering: Individuals labeled as subversives were banned from higher education, forced into unemployment, and forcibly committed to asylums. Many suffered long-term psychological trauma, loss of earnings, and intense social shame as a result of Stasi lies.[12]

**ILLEGAL SURVEILLANCE ON AMERICANS: Uncontroverted fact:** Defendant FBI has been illegally collecting information on US persons in open violation of the law. FBI admitted in its rulebook that it uses CIA and NSA to spy on Americans without a warrant. *See* Second Amended Complaint, **Exhibit 12**.

On October 21, 2021, the USDOJ Office of Inspector General released an Audit Report denouncing that Defendant FBI's "widespread non-compliance" with the factual accuracy review procedures ("Woods Procedures") required for applications under Section 702 of the Foreign Intelligence Surveillance Act ("FISA"), Section 702 (50 USC 1804(a)(4)) and 50 USC § 1801(h), to carry out electronic surveillance of U.S. Persons. Plaintiffs request that this court take judicial notice of this Audit. Furthermore, on November 2021, the presiding judge of the FISA Court, James Boasberg, issued a ruling concluding that Defendant FBI "has been seriously and systematically abusing its warrantless electronic surveillance authority."[13] A prior 2019 audit report had revealed that Defendant FBI had engaged in a "pattern of "abuses and deficiencies in the FBI's FISA process." (Complaint, ¶ 313 and Second Amended Complaint **Exhibit 9**).

I.  **VOICE-TO-SKULL AUDITORY EFFECT**: **Uncontroverted fact:** Voice-to-Skull auditory effect is a torture tactic documented under United States patent number 4,877,027 for Hearing System dated June 6, 1988. The equipment required to produce a microwave beam that carries a voice signal and produce Voice-to-Skull effect is military-grade and relies on the use of satellites. Voice-to-skull auditory effect is a microwave-pulsed sonic attack. **Exhibit 2.**

This technology has been used by the United States military to mind-control enemy combatants in places like Iraq.[14] A Department of Defense report acknowledged that "the United States is moving aggressively to retain leadership in directed energy, which it describes as focused beams of electromagnetic energy that can be used to disrupt or harm humans, devices, missiles, vehicles, and other targets". **Exhibit 2**, page 90.

---

[12] https://fee.org/articles/10-terrifying-facts-about-the-east-german-secret-police/

[13] https://oig.justice.gov/sites/default/files/reports/21-129.pdf

[14] Please see  https://www.dailykos.com/stories/2007/12/23/425814/- and https://www.forbes.com/sites/markcancian/2020/09/18/will-dod-deploy-a--heat-ray-and-the-voice-of-god-against-demonstrators/?sh=6c4755cc7add

These uncontroverted facts demonstrate how inappropriate and misplaced are Defendants' pervasive derogatory "implausible" and "fantastical" claims peppered throughout the Motion to Dismiss. Without such demeaning hate speech, Defendants lack a "reason" to argue dismissal under the theories they raise in their motion.

Although the Court at this stage must accept as true the well-pleaded facts of the Second Amended Complaint, Plaintiffs went beyond their legal duty and set forth the aforementioned examples to set the grounds that justify an order striking these mocking and condescending terms and phrases from the record.

In light of the above, Plaintiffs request that this Court **strike from the record** the aforementioned false statements, misrepresentations and hate speech. Basic precepts of justice preclude overzealous litigants' false assertions to support an unwarranted dismissal based on false premises. This contravenes the basic precepts of good-faith, candor and justice that should guide a parties' conduct before the Court.

## Statement of The Issues to Be Ruled on By the Court

This Court must rule on the following issues:

I.        If it should strike from the record the false statements and misrepresentations contained in Defendants' Motion to Dismiss.

1.        If Plaintiffs have standing.

2.        If any of the claims of the Second Amended Complaint is susceptible to dismissal.

3.        If the Second Amended Complaint contains well-pleaded, plausible, factual allegations that compel the denial of the Motion to Dismiss on Article III, F.R.Civ.Proc. 8, 12(b)(1) and 12(b)(2) grounds.

## Standard of Review for Motion to Dismiss

I.  **Motion to Dismiss**

The Court must rule if pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6) and this Court's precedent on Article III jurisdiction, this case should be allowed to proceed.

14

**Rule 12(b)(1)**

Regarding the lack of jurisdiction claim under F.R.Civ.Proc. 12(b)(1), this Court's precedent holds that "[f]ederal-question jurisdiction exists if a plaintiff's well-pleaded complaint raises a claim that arises under federal law. *Sinegal v. Big Horn Auto Sales*, 2022 WL 799908 (S.D. Texas 2022).

A court reviewing a Rule 12(b)(1) MTD must 'take[s] the well-pled factual allegations of the complaint as true and view[s] them in the light most favorable to the plaintiff.' *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020); *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012); *Russell v. Harris County Texas*, 500 F.Supp.3d 577, 595 (S.D.TX 2020).

"[C]ourts must …accept all factual allegations in the complaint as true. *Stratta v. Roe, supra*. "A MTD for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction." *Venable v. La. Workers' Comp. Corp*., 740 F.3d 937, 941 (5th Cir. 2013). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Bell Atlantic Corp. v. Twombly, supra*, 550 U.S. at 556, *quoting Scheuer v. Rhodes*, supra, 416 U.S. at 236.

"When examining a factual challenge to subject-matter jurisdiction under Rule 12(b)(1), **which does not implicate the merits of a plaintiff's cause of action**, the district court has substantial authority 'to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Wilmington v. Purifoy*, 2022 WL 861509 (S.D. Texas 2022) (emphasis ours) *quoting Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A*., 104 F.3d 1256, 1261 (11th Cir. 1997) (citation omitted); *Clark v. Tarrant Cty*., 798 F.2d 736, 741 (5th Cir. 1986).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *IM*

*v. Houston Independent School District*, 2021 WL 2270271 (S.D. Tex 2021). "A complaint 'does not need detailed factual allegations,' but the facts alleged 'must be enough to raise a right to relief above the speculative level.' *Id.*, *quoting Cicalese v. Univ. Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019).

**F.R.Civ.Proc 8** only requires that the complaint contain "enough facts to state a claim to relief that is plausible on its face." *Russell v. Harris County Texas*, *supra*, 500 F.Supp.3d at 596 quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**Article III Standing**

Likewise, this Court's precedent opposes Defendant's second jurisdictional challenge regarding Plaintiffs' individual and associational standing.

"Standing requires: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent (not 'conjectural' or 'hypothetical'); (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Russell v. Harris County Texas, supra*, 500 F.Supp.3d at page 595. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

The 'injury in fact' test requires the party seeking review be himself among the injured. *Sierra Club v. Morton*, 405 U.S. 727, 734-735, (1972).

In the case of associations or corporate entities, the doctrine requires that its members can assert injury-in-fact from the challenged conduct. *Lujan v. Defenders of Wildlife*, *supra*. Associational requires that one or more of its members be directly affected by the challenged action. *Sierra Club v. Morton*, *supra*, 405 U.S at 739.

Article III standing requires that it must be "likely," as opposed to merely "speculative," that a plaintiff's injury will be "redressed by a favorable decision." *Russell v. Harris County Texas*, *supa*, 500 F.Supp.3d at 601 *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

16

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan v. Defenders of Wildlife*, *supra*, 504 U.S. at 56, quoting *Lujan v. National Wildlife Federation, 497 U.S. 871,* 883–889 (1990).

### Rule 12(b)(6)

This Court's precedent also contradicts Defendants' assertion that the complaint should be dismissed under Rule 12(b)(6).

"In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true." *Harrington v. State Farm Fire & Cas. Co*., 563 F.3d 141, 147 (5th Cir. 2009).

Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Sinegal v. Big Horn Auto Sales, supra*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Russell v. Harris County Texas*, 500 F.Supp.3d 577, 596 *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Bell Atlantic Corp. v. Twombly*, *supra*, the Supreme Court held that federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief." "The complaint must … contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Patrick v. Wal-Mart, Inc*., 681 F.3d 614, 617 (5th Cir. 2012) (citations omitted). Hence, the pleadings also "must claim that the plaintiff is entitled to relief under a valid legal theory." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

17

A "complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Russell v. Harris County Texas, supra.*

Accordingly, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief. *Harrington v. State Farm Fire & Cas. Co.*, *supra,* 563 F.3d at 147 (citations omitted). "[C]ourts must… accept all factual allegations in the complaint as true." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).

Even though the court's review under Rule 12(b)(6) is limited to "the complaint, any documents attached to the complaint, and any documents attached to the MTD that are central to the claim and referenced by the complaint," the Court may also rely on judicially noticed facts. *Lone Star Fund v (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

District courts are reluctant to dismiss a sufficiently pleaded claim without allowing the plaintiffs to make a showing, if they can, that the challenged government policy is irrational. *Russell v. Harris County Texas*, *supra*, 500 F.Supp.3d at 613-614.

Finally, even though the Court can take consider documents and judicial notice of facts to adjudicate a MTD, it can do so without converting the MTD into a Motion for Summary Judgment. "The court may consider matters outside the pleadings, such as testimony and affidavits, to resolve a factual challenge to subject-matter jurisdiction, without converting the MTD to one for summary judgment." *Wilmington v. Purifoy*, *supra*, 2022 WL 861509 (S.D. Texas 2022) *quoting Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, *supra*, 104 F.3d at 1261. However, in so doing, the Court must ensure it does not disregard its duty to accept as true all the well-pleaded facts.

### The Privacy Act and Exhaustion of Administrative Remedies

The Court has jurisdiction "to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). Thus, to state a claim upon which relief can be granted, Plaintiffs must plead facts showing that agency records have been improperly withheld. *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150 (1980).

### Summary of the Argument

First, Defendants' glaring omissions evading the discussion of the constitutional and Privacy Act violations as well as the request for render the Motion to Dismiss ineffective. Those are the fundamental claims of the complaint from where the rest of the causes of action derive. Yet Defendants don't discuss them.

 Plaintiffs' claims regarding Defendants FBI's and Defendants Wray's and Kable's actions under color of law that resulted in the inclusion of Plaintiffs' and TJ Members' names to the TSDB without reasonable suspicion are grounded upon official documents and uncontroverted material facts that exceed the legal requirements at this initial stage of the proceedings. Decades' worth of dissemination of their names to law enforcement and private corporations categorizing them as terrorists constitutes a significant liability that cannot just be ignored.

Another omission from Defendants' MTD discussion is Plaintiffs' claim for Mandamus asking the Court to order Defendants to comply with the legal duties of their official positions.

As to the lack of merits of the MTD, the mischaracterizations and false statements it relies upon to force an argument of "implausibility" of the well-pleaded facts falls short. Plaintiffs move for the Court to strike from the record the empty inflammatory language that does not create facts upon which a legal theory can be argued. The dismantling of Defendants' Motion to Dismiss' false premises cancels the legal arguments built thereupon.

Once the Court strikes from the record the false statements of the Motion to Dismiss, the plausible, well-pleaded facts of the Second Amended Complaint easily compel the denial of the Motion to Dismiss.   However, even without striking the inflammatory language, there exist well-pled facts which compel the denial of the Motion to Dismiss.

Furthermore, upon disregarding Defendants' unacceptable verbiage used to degrade and mischaracterize the Second Amended Complaint's pleadings, coupled with the judicial notice of relevant, true historical and present events, the Court is left with plausible, exceptionally well-pleaded Second Amended Complaint. Defendants' lack of candor to the Court resulted in their assertion that "all pleadings" are conclusory and implausible. They made no exception for those pleadings that Defendants themselves adopted in their MTD, such as former TSC Director of Operations, statement under penalty of perjury.

It is inappropriate at a Rule 12(b)(1) stage of a proceeding to carry out a credibility assessment of the well-pleaded facts of the Second Amended Complaint since the Court must interpret them in the light most favorable to Plaintiffs.

The well-pleaded facts of the Second Amended Complaint establish both Targeted Justice's Plaintiffs' *prima facie* standing deriving from their plausible alleged injury-in-fact.

As to Defendants' claim that the Privacy Act claims must be dismissed for failure to exhaust administrative remedies, the claim is equally misplaced. Defendants' denied Plaintiffs' Privacy Act requests. This was properly alleged in the Second Amended Complaint. The agency's denial of the Privacy Act request precludes the need to exhaust administrative remedies.

Additionally, when the exhaustion of remedies constitutes an exercise in futility or infringes upon constitutional rights, the doctrine is inapplicable. The record of this case reflects the futility of any appeal that could have been filed with any of Defendants. Four months after the filing of this case, Defendants still insist on denying Plaintiffs the information on their TSDB status

20

under the guise of the inapplicable "sensitive law enforcement privilege" inapplicable to persons that are not the object of a criminal investigation.

The Second Amended Complaint's plausible, well-pleaded facts exceed the Rule 12(b)(6) requirements and compel the denial of the Motion to Dismiss. Most of the pleadings are either directly quoted or extracted from official government documents that Defendants cannot deny.

Plaintiffs' pleadings, claims and prayer for relief derive from Defendants' own admissions of acts violating the constitution, that have perpetrated damages on them.

## Argument

### The Glaring Omissions That Render the MTD Lacking

Defendants abstained from invoking any of the "fantastical"' or implausible allegations against many of the Second Amended Complaint's fundamental claims. Among these ignored claims is the first and principal claim for relief: the Declaratory Judgment sought regarding the unconstitutionality of 97% of the TSDB resulting from Defendants FBI's and Defendants Wray's and Kable's actions under color of law that resulted in the placing of innocent civilians on a terrorist watchlist without their knowledge, consent, opportunity to confront the evidence or redress to remove them.

On a myriad of pleadings of the Second Amended Complaint, Plaintiffs alleged they were illegally placed in the list without having any ties to terrorism. As such, they unquestionably meet standing requirements to challenge their illicit inclusion on the TSDB.

There can be no doubt that the inclusion of innocent people on a terrorist database causes irrefutable and irreparable damages to the affected individual. Without delving into the atrocities of the human experimentation and torture program, the mere inclusion of an innocent person in a terrorist database is presumed to cause him or her serious damages.

The Second important ignored claim is Defendants' dissemination to over 18,000 law enforcement and over 1400 corporations of the TSDB classifying Plaintiffs as domestic terrorists. Although Plaintiffs may never know the full extent that decades of such governmental defamation has caused them, they have a right that this Court order that nefariously illegal practice to stop. Despite its prominence within the claims of the Second Amended Complaint, Defendants failed to discuss it.

Plaintiffs may never know the extent of the damages Defendants FBI's Wray's, Kable's and their predecessors' intentional, unconstitutional, illegal, and erroneous actions have caused them. However, it is unquestionable that if they are innocent civilians, they have an absolute right to be removed from the TSDB. Immediately. Furthermore, Plaintiffs and TJ Members are entitled to compensation for the damages they have suffered for having been unjustly and illicitly classified as terrorists and placed on the TSDB.

Plaintiffs' constitutional and Privacy Act challenge to the TSDB that Defendants fail to discuss is grounded upon uncontroverted government documents and material facts that exceed the legal criteria of the "well-pleaded facts" of Motion to Dismiss stage. They go beyond *prima facie* allegations. They constitute material uncontroverted facts of Defendants' malfeasance.

Even though the challenge to Defendant FBI's illegal practice of placing innocent civilians on a McCarthy blacklist is the backbone of the Second Amended Complaint, Defendants do not even mention it. Read together, the Second Amended Complaint, its Exhibits and **Exhibit 1** of this motion are legally sufficient to order the elimination of the McCarthy blacklist.

The third significant set of claims that Defendants entirely avoided discussing were those requesting that the Court order them observe and adhere to their oaths of office. Specifically, Plaintiffs demanded that the Court order Defendants take the necessary actions to protect the former's civil and constitutional rights.

Since Defendants did not object to any of the germane claims listed above, it is not necessary to argue how well-pled, plausible, and appropriate they are. As such, they should be deemed untouched by the MTD.

**Request to Strike**

Defendants do not call "fantastical" the constitutional challenges to the abuse of discretion, illegal agency action, violation of privacy and civil rights that the listing of non-terrorists in a terrorist database entail. Defendants do not even discuss the unconstitutionality of placing in a McCarthy blacklist for life innocent individuals without so much as notice, opportunity to rebut or remove their names from that nefarious list.

Instead, they call fantastical and imagined the consequences of being illegally placed on that list. In so doing, Defendants disregard the applicable standard that requires that the Court accept as true all well-pled facts of the Second Amended Complaint. Pursuant to the Court's precedent, "he plausibility standard is not akin to a 'probability requirement'". *Sinegal v. Big Horn Auto Sales*, 2022 WL 799908 (S.D. Tex. 2022) *citing Bell Atl. Corp. v. Twombly, supra,* 550 U.S. at 556. Particularly when Plaintiffs have not had the chance to carry out discovery.

Defendants do not seem to object to silently accusing, judging, and classifying as a terrorist a completely innocent individual. They don't see anything wrong with that. In fact, they defend it and warn that this Court should not interfere with its unconstitutional and illegal actions. *("[T]he public interests would be deeply harmed should the Court enter any injunctive relief that would impact the operations of the TSDS…"* MTD, p. 29, Dkt 41 p. 37).

Sweeping under the rug the outrageous constitutional violation that constitutes blacklisting an innocent individual as a terrorist, Defendants then casually categorize as 'fantastical' the life of torture that ensues such illegal conduct. However absurdly cruel it sounds, Plaintiffs accurately

pleaded in the Second Amended Complaint the nefarious consequences they have experienced as a result of Defendants' illegal and unconstitutional act of including them in the TSDB.

It is appropriate to distinguish this case from *Roum v. Fenty*, 697 F. Supp. 2d 39, 41 (D.D.C. 2010). In their MTD, Defendants falsely assert that "the plaintiff in *Roum* made similar allegations to Plaintiffs' here."[15] The *Roum* case did not entail a request for Declaratory Judgment on the grounds of Defendants' FBI's, Wray's and Kable's unconstitutional and illegal practice of including the names of innocent people in a terrorist database and disseminating it throughout the nation and the world.

Once plaintiffs get access to when, how and why they were illegally placed in the TSDB, discovery will reveal the tentacles behind the motives for it.

Plaintiffs' constitutional claims that serve as basis to the rest of the claims are not only plausible, but also grounded on uncontroverted, material facts and documents.

Although Defendants' position improperly calls for this Court to weigh in on the credibility of the well-pled facts, the applicable standard requires that the Court believe the Plaintiffs' pleadings. The MTD should thus be denied.

**Plaintiffs have Standing**

Having disposed of the condescending and mocking language used to delegitimize Plaintiffs' well-pleaded claims, the challenge to their standing must be discarded as well.

Likewise, Defendants improperly seek to have the Court conclude that Plaintiffs don't have standing relying on the same mischaracterizations, false statements and glaring omissions. The deconstruction of the false facts contained in Defendants' Motion to Dismiss also deflate the lack of standing argument as the well-pled facts are entirely plausible, as most of them are even uncontroverted material facts.

---

[15] Page 13, MTS, p. 21 of docket 41.

The Second Amended Complaint sufficiently pled Plaintiffs' injury-in-fact, establishing *prima facie* standing. It is inappropriate at a Rule 12(b)(1) stage of a proceeding for a Defendant to ask the Court to enter into a credibility assessment of the well-pled facts since they must be interpreted in favor of Plaintiffs.

**Exhaustion of Remedies Inapplicable**

Plaintiffs did not have to exhaust administrative remedies regarding the Privacy Act requests because Defendants failed to produce the information requested.

The complaint clearly alleges that Defendants refused to produce meaningful information to Plaintiffs' Privacy Act requests by either denying them entirely or providing a Glomar "we cannot confirm or deny" response. (Complaint, 72-73, 75).

The complaint clearly alleges that Defendants refused to produce meaningful information to Plaintiffs' Privacy Act requests by either denying them entirely or providing a Glomar "we cannot confirm or deny" response.

Defendants improperly withheld from plaintiffs the records sought. Hence under 5 U.S.C. § 552(a)(4)(B), this Court has jurisdiction to adjudicate the Privacy Act violations for defendants' failure to produce the required information.

Defendants leave out from their "dismissal" argument the request for Declaratory Judgment under the Privacy Act section 502(a) for damages resulting from the dissemination of false and defamatory information about them to over 18,000 law enforcement agencies and 1440 corporations of Plaintiffs' private information falsely defaming them as terrorists. 5 U.S.C. § 502(a) (Complaint ¶¶188-191; 554-555). The Privacy Act violations run parallel to the due process claims under the 6th Amendment of the US Constitution against Defendants FBI, Wray and Kable for illegally including Plaintiffs and TJ Members in the TSDB, without the required reasonable

grounds to do so since the dissemination of the TSDB improperly containing their names constitutes a grave Privacy Act violation.

Defendants have varied their nonresponsive letter replies to Plaintiffs from asserting they have no records to refusing to confirm or deny having any. Both of these constitute an outright denial of the information that precludes the need for an appeal under the Privacy Act.

Furthermore, two exceptions to the doctrine of exhaustion of administrative remedies is applicable in the case at bar.

The first of these – **when the appeal constitutes an exercise in futility** – is notably applicable to this case.

Any appeal to Defendants regarding the Privacy Act requests is an exercise in futility because they have even asserted in a letter to one Plaintiff and before this Court that they will not provide Plaintiffs' TSDB information falsely asserting it is sensitive law-enforcement information. Therein lies the pretense behind the exhaustion of remedies argument: it's just another mechanism to delay the fact-finding process and justice.

After the filing of the complaint, Defendant DHS concocted a creative new reply that proves the futility of any intent to exhaust administrative remedies. Defendant DHS replied that will not provide the information because it is categorized as "Security Sensitive Information" (Complaint, ¶ 73).

Defendants have made it clear they will not produce Plaintiffs' TSDB information unless a Court compels them to. Thus, the futility exception to exhaustion of administrative remedies applies.

A second exception to the exhaustion of administrative remedies that is clearly applicable to the case at bar arises from Defendants' continuous violations of Plaintiffs' and TJ Members' constitutional and Privacy rights that perpetrate irreparable harm on them. Defendants' reckless

violation of Plaintiffs' constitutional rights mandates urgent Court intervention that precludes the exhaustion of administrative remedies.

**F.R.Civ.Proc. 12(b)(6)**

Just as in the context of the F.R.Civ.Proc. 12(b)(1), the elimination of the inappropriate characterizations from the argument leaves Defendants devoid of any facts upon which to construe a Rule 12(b)(6) argument of failure to set forth a claim upon which relief should be granted.

There are dozens of pleadings that defeat the request for dismissal on these grounds. However, the most important, bold and unquestionable stems from Defendants' most glaring omission to discuss the Second Amended Complaint's First Claim for Relief. To wit: a Declaratory Judgment asking the Court to declare unconstitutional the secret placing of non-terrorists such as Plaintiffs and TJ Members in the TSDB.

This, despite the fact that the First, Second and Fourth Causes of Action are requests for Declaratory Judgment, that stem from the same acts whose constitutionality is being challenged. Complaint, ¶¶547-548, 549-550, 554-555.

Defendants' failure to discuss the constitutional challenge to a terrorist database secretly laden with the names of non-terrorists constitutes an obstacle to the dismissal they seek. Particularly when Defendants refuse to even accept that Plaintiffs allege that they were improperly placed in the list and refuse to acknowledge that they are non-terrorists included in the TSDB.

Plaintiffs' well-pleaded claims asserting they were illegally placed in the TSDB in violation of their due process rights constitutes a concrete claim upon which this Court can grant the Declaratory Judgment remedy and damages requested.

"Fantastical" insults aside, Defendants did not identify a single paragraph of the Second Amended Complaint that is not a well-pleaded set of facts. The Second Amended Complaint's

plausible, well-pleaded facts exceed the Rule 12(b)(6) requirements and compel the denial of the Motion to Dismiss.

The preparation of the Original and Second Amended Complaint required the revision of thousands of pages that include, inter alia, statements under penalty of perjury and deposition transcripts produced in prior litigation, audit and government reports, and news articles. Contrary to Defendants' assertion that the Second Amended Complaint is made up of "conclusory allegations", over eighty percent of its pleadings go beyond the well-pleaded facts requirement since they constitute uncontroverted material facts from official sources.

Defendants' Motion to Dismiss should be denied because it failed to raise a single plausible argument that warrants dismissal. Defendants failed to point out a single pleading that did not comply with the "well-pleaded facts" requirement. Reading all the well-pled facts in the light most favorably towards Plaintiffs, the Court should DENY Defendants' MTD.

## Conclusion

IN WITNESS WHEREOF, Plaintiffs ask that this Court GRANT this Motion and consequently:

a) ORDER stricken from the record the derogatory, offensive and mocking language used to disparage Plaintiffs' pleadings;

b) DENY Defendants' Motion to Dismiss;

c) Issue a National Preliminary Injunction declaring illegal all the categories of the TSDB that include the names of non-investigative subjects such as Plaintiffs and TJ Members;

d)  Issue the F.R.Civ.Proc Rule 16 Initial Scheduling Conference.

e) ORDER Defendants to abstain from further misrepresentations to the Court and the use of objectionable language against Plaintiffs.

Respectfully submitted,

**I CERTIFY**: That I have filed this motion by means of the Court's CM/ECF platform that

notifies all attorneys of record.

**ANA LUISA TOLEDO**

/s/*Ana Luisa Toledo*
*Southern District of Texas No. 3825092*
*Attorney for Plaintiffs*
*PO Box 15990*
*Houston, TX 77220-1590*
*Tel. 832-247-3046; 340-626-4381*
*analuda@proton.me*

**DATED** this 2ⁿᵈ  day of May, 2023

## Certificate  of Conference

On Friday, April 28, 2023, the undersigned counsel consulted with counsel for Defendants to exceed the 25-page limit and expressed that she had no objection that Plaintiffs exceed the motion page limit by no more than 5 pages (excluding Table of Contents and Table of Authorities).

**ANA LUISA TOLEDO**

/s/*Ana Luisa Toledo*
*Southern District of Texas No. 3825092*
*Attorney for Plaintiffs*
*PO Box 15990*
*Houston, TX 77220-1590*
*Tel. 832-247-3046; 340-626-4381*
*analuda@proton.me*

**DATED** this 2ⁿᵈ  day of May, 2023.